JARVIS PATTEN *vs.* NATHANIEL E. PERCY.

Sagadahoc.     Opinion May 1, 1885.

*Shipping.     Earnings.     Action by part owner against master.*

An action for money had and received cannot be maintained by a part owner (not the ship's husband), for his share of the freight money, against the master, who collected and remitted the same to the ship's husband after receiving a written notice from such part owner to remit his share to him.

ON REPORT.

Assumpsit for money had and received.
The opinion states the material facts.

*Adams and Coombs,* for the plaintiff.

The relation of part owners of a vessel is that of tenants in common, and not that of joint tenants; and when the master, as agent of the owners, has in his hands money which he holds as the net earnings of the vessel, after having deducted all his disbursements, each of the owners has a separate interest in such money, and each is entitled to receive from the master his share, unless he has authorized some other owner, or some other person, to receive it for him. The master in such case, is the debtor to each owner. See *Thorndike* v. *DeWolf,* 6 Pick. 120. True that it is a custom for the ship's husband to receive the freight money from the master and distribute it among the owners. But here, any implied authority from such a custom was expressly

revoked by plaintiff's letters to defendant. And it further appeared in this case, that the agency and authority of ship's husband had terminated by the dissolution of the firm of George F. Patten's Sons. It is a familiar principle that when an agency is held by a firm, the dissolution of the firm terminates the agency. *Martine* v. *International Life Ass. So.* 5 Lans. 535.

*C. W. Larrabee,* for the defendant, cited : Story, Agency, § § 35, 45 ; *Low* v. *De Wolf,* 8 Pick. 101.

DANFORTH, J. The plaintiff was a part owner in the ship " Transit, " of which the defendant was master, and had been from 1869 up to June, 1878. He was engaged as ma-ter by George F. Patten, the ship's husband, or managing owner. Mr. Patten continued as such until his death, and was succeeded by his sons, under the name of George F. Patten's Sons, who continued as such until near the beginning of the year 1878, when the firm was dissolved, and James T. Patten, one of the members of the firm, acted and was recognized as such until the sale of the ship. To George F. Patten's Sons, the defendant had remitted all the freight money belonging to the owners without objection from any one until 1877, when the plaintiff, by a letter which is in the case, requested the defendant to remit his " one-fourth " of the freight then due the owners, to his credit ; and after another voyage, wrote another more urgent letter to the same effect. Neither of the requests or demands were obeyed ; hence this action. The defendant acknowledges having received these letters, but whether before or after the remittances to which they refer, he is not sure. Assuming that it was before, what are the rights of the parties?

This money was received for freight. It was, therefore, a part of the earnings of the ship. As such, it was the joint property of the owners. " Although part owners are tenants in common of the ship, they are jointly interested in her use and employment, and the law as to her earnings, whether as *freight,* cargo, or otherwise, follows the law of partnership. " 3 Kent, (12 ed.) 155, note ; Story on Part. § 442, note 2. The ship's husband is the agent of all the owners and represents this money,

not as belonging to the part owners as tenants in common, but as partnership property. His duties necessarily involve the expenditure of more or less money as well as receiving it. He has the care of the ship, must procure its outfits, enter into charter parties, procure and collect freights, adjust contracts, and for these and such like purposes, disburse as well as receive money. "His acts for these purposes are considered to be the acts of all the owners, who are liable for all contracts entered into by him for the conduct of their common concern—the employment of the ship." Abbott on Shipping, (7 Am. ed.) 140 ; Story on Agency, § 35, note. To secure him for his liability for these expenditures, he has a lien upon the freight money. Flanders on Shipping, § 388 ; Collyer on Part. § 1214 ; Story on Part. § 443.

Thus it will be seen that until the accounts of the managing owner are settled, it will be impossible to ascertain what portion of the earnings of the ship is due to the several part owners, or any one of them. Over these accounts the master has no control. He is hired by and amenable to, the ship's husband. The master, in many instances, must first receive the freight from necessity. He may undoubtedly deduct from it his own proper expenses, but can go no further. He may not know the expenses of the ship's husband, or if he does, he can have no authority to adjust them so as to divide the net proceeds among the several owners. It is said there were in this case, no expenses of the ship's husband to be adjusted, but it appears that the plaintiff, after the settlement of the accounts, claims a very much smaller sum than would have been his share of the earnings remitted by the master. Nor can the master know the share in the ship of any particular owner, except from the register, and that, as in this case, does not always speak the truth.

From these principles, it follows that the master, if not required, was authorized to remit to the managing owner, as he had before done, with the knowledge of, and without objection from, the plaintiff; and in the notices for a change of the remittances to himself, there is no intimation of any change in, or revocation of authority of the ship's husband, but a subsequent

as well as a prior recognition of it. *Grant* v. *Carver*, 75 Maine, 524.

*Judgment for defendant.*

PETERS, C. J., WALTON, LIBBEY, EMERY and FOSTER, JJ., concurred.